### ALEXANDER WEBER V. FREDERICK BEIER ET AL.

HUSBAND ENTITLED TO A HOMESTEAD, THOUGH NOT LIVING WITH HIS WIFE.

Where a husband is left with his minor children living with him in the homestead, his wife having left him, he is entitled to a homestead exemption the same as if he were living with his wife and occupying the homestead.

HAYNES, J.

In this case, Weber filed his petition in the common pleas against Frederick Beier and others, in which he set forth that he had recovered a judgment against Frederick Beier for the sum of $95, and that by due process of law it had become a lien upon certain premises in the city of Toledo which were occupied as a homestead by said Beier. Other creditors and mortgagees were made parties, and one of these set up a mortgage under which by proceedings in this case the property itself was sold; and, the proceeds being in court, the defendant—Beier—makes application as against the judgment of Alexander Weber (the mortgage, of course, having been executed by him) to have a homestead exemption of $500 allowed him out of the moneys in the hands of the court, in lieu of his homestead. That application was heard in the court of common pleas and was decided against him, and from that order and decision he

took an appeal to this court. The matter came on for hearing here and has been heard upon evidence produced by the parties. It appears from the testimony that Frederick Beier was a widower, having minor children living with him; that he intermarried with a lady whose married name is Eliza A. Beier. She lived with him some three or four months, when she left him, as is alleged by reason of his transgressions, and thereupon she filed a petition for alimony, which having been heard in the common pleas, that court allowed her a certain amount for alimony, and that is one of the claims which is set up in the original pleadings in the court of common pleas. The contention here is, between Alexander Weber and Frederick A. Beier. It appears that since the filing of the petition Mrs. Beier has not rejoined her husband, but still lives separate and apart from him with *her* minor children, while he remains with *his* minor children, and the question raised here is, whether he, under these circumstances, as against Weber, is entitled to an exemption of $500 in lieu of a homestead?

It is contended on the part of Weber that section 5435, Revised Statutes, is to govern the rights of the parties. It reads:

"Section 5435. Husband and wife living together, a widow, or a widower, living with an unmarried daughter or unmarried minor son, may hold exempt from sale, on judgment or order, a family homestead not exceeding one thousand dollars in value; etc.

And it is said that inasmuch as Mr. Beier does not come within either of the categories mentioned in that section, therefore he is not entitled to a homestead, nor to an exemption in lieu of a homestead.

Section 5440 provides: "When a homestead is charged with liens, some of which, as against the head of the family, or the wife, preclude the allowance of a homestead to either of them, and others of such liens do not preclude such allowance, and a sale of such homestead is had, then, after the payment, out of the proceeds of such sale, of the liens so precluding such allowance, the balance, not exceeding five hundred dollars, shall be awarded to the head of the family, or the wife, as the case may be, in lieu of such homestead, upon his or her application, in person, or by agent or attorney."

It is contended on the part of Frederick Beier that he comes within the definition of a "head of a family" and that he is entitled to the benefit of that section of the statute.

The questions that have been argued here and which arise under these statutes are somewhat perplexing. This arises from the fact that the statutes have been amended at various times, and not always with the single view of having uniformity in regard to the language that is used. A decision of the question will compel us to make an investigation of the statutes as they have stood heretofore and as they were enacted in the revision which was made under the authority of the legislature of the state, for the purpose of ascertaining what the present status of the law is upon this subject.

The act of March 23, 1850, provided, section 1, (48 O. L., 29), as follows:

"Be it enacted, 'etc.,' That from and after the fourth of July next the family homestead of each head of a family shall be exempt from sale on execution on any judgment or decree rendered on any cause of action accruing, after the taking effect of this act; provided that such homestead shall not exceed five hundred dollars in value."

That was the general description—that he should be the "head of a .amily." Evidently anticipating that there might be some questions raised from time to time, the legislature, by section 4, defined who some of the parties should be that might be included in the definition "head of a family," or who should be entitled to the benefit of the act, and that section provides :

"Section 4. Every widower, or widow, having an unmarried minor child or children, residing with him or her, as part of his or her family shall have the benefit of this act, in the same manner as married persons. And married persons, living together as husband and wife, shall be entitled to the exemption in this act provided, although they shall have no children."

So while it seemed to be assumed that "the head of a family" would include a man who had a wife and children, it was provided that a widower or widow, having an unmarried child, or children, living with him or her, as a part of the family, should have the benefits of the act; and that a husband and wife, living together—evidently meaning if they lived together without children—should have the benefit of the act.

It will be observed that there was not included in that section of the statute a class of persons which is quite large in this state, viz.: persons who have been divorced and who may be living in the homestead with a family of children ; nor did it include the cases where the husband is living with his children and the wife had left him; nor did it include the cases where the wife is living in the family homestead with the children, the husband having left.

In setting out how the debtor should have the benefit of the act, the second section provided :

"Section 2. That the Sheriff, or other officer executing any writ of execution founded on any judgment or decree such as is mentioned in the first section of this act, on application of the debtor, or his wife, his agent or attorney, *if such debtor have a family*, and if the lands or tenements about to be levied on, or any part or parcel thereof shall be the homestead thereof, shall cause the inquest of appraisers, upon their oath, to set off such debtor by metes and bounds a homestead not exceeding five hundred dollars in value, and the assignment of the homestead so made shall be returned, "etc. * * * So that the phrase there used, instead of "head of a family" is: "If such debtor have a family." That law continued in force until the year 1869, when, by an act passed April 9, 1869, (66 O, L., 48), the first and second sections—which I have already read—were re-enacted, with the single change made—so far as I can discover, that the homestead might be of the value of one thousand dollars instead of five hundred dollars, as theretofore. And then was also enacted the section which is now 5440 :

"Section 5440. When a homestead is charged with liens, some of which, as against the head of the family, or the wife, preclude the allowance of a homestead to either of them, and others of such liens do not preclude such allowance, and a sale of such homestead is had, then, after the payment out of the proceeds of such sale, of the liens so precluding such allowance, the balance, not exceeding five hundred dollars, shall be awarded to the head of the family, or the wife. as the case may be, in lieu of such homestead, upon his or her application, in person or by agent or attorney."

The law continued in force as we find it in 66 O. L., 49, up to the time of the revision; and we find the revision in 75 O. L., I shall read from pages 692 and 800. Section 137 provides.

"Section 137. The act of April 9, 1869, entitled 'an act to amend an act to exempt the homesteads of families from forced sale on execution to pay debts, passed March 23, 1850'—shall be repealed."

The effect of that was to repeal the first section of the homestead act which I have referred to, but not the second section, and that reads as follows:

"The officer executing any writ of execution founded on a judgment or decree shall, on application of the debtor, his wife, agent, or attorney, at any time before sale, if such debtor have a family, and if the lands or tenements about to be levied upon, or any part or parcel thereof, constitute the homestead thereof, cause the inquest of appraisers, upon their oaths, to set off to such debtor, by metes and bounds a homestead not exceeding one thousand dollars in value;" etc. * * * which follows substantially, I believe, the original homestead act of 1850, and is the same as section 5438, Revised Statutes.

Section 67 provided: "When a homestead is charged with liens, some of which, as against the head of the family, or the wife, preclude the allowance of a homestead to either of them, and others of such liens do not preclude such allowance, and a sale of such homestead is had, then, after the payment out of the proceeds of such sale, of the liens so precluding such allowance, the balance, not exceeding five hundred dollars, shall be awarded to the head of the family, or the wife, as the case may be, in lieu of such homestead, upon his or her application, in person, or by agent or attorney."

Reading the same as section 5440.

Now the question is: What is meant by the fact that section 1 of the original act has been repealed? You will see that it has been repealed by the revision. The object and purpose of the revision and the rights and duties of the commissioners appointed to make the revision and the effect of their acts, are set forth in the case of Allen v. Russell, 39 O. S., 336. In that case a levy had been made upon a certain lot and a widow had asked to have the property set off to her as a homestead, it not exceeding in value $1,000. The case says: "She was at the time and ever since has been a widow but was not at any time living with an unmarried daughter or unmarried minor son." And the question came up whether she was entitled to have a homestead, and a discussion had arisen over the change in the acts. Judge Okey says: "The act of 1871, 68 O. L., 106), amendatory of the homestead act of 1850, in force when the judgment recited in the *vendi ex* was rendered, provided as follows: 'Every widower having an unmarried minor child or children residing with him as part of his family, and every widow shall have the benefit of this act.'"

It will be seen that no question could arise as to the widow being entitled to the provisions of that act of 1871.

"This act was repealed by the act of 1878. * * * The latter provision has been incorporated into the Revised Statutes, and, properly punctuated, is as follows:

"Husband and wife living together, a widow, or a widower living with an unmarried daughter or unmarried minor son, may hold exempt from sale, on judgment or decree, a family homestead not exceeding one thousand dollars," in value etc.

"Where one or more sections of a statute are repealed and re-enacted in a different form, the fair inference is, in general, that a change in meaning was intended; though even in such a case the intention may have been to correct a mistake or remove an obscurity in the original act, without changing its meaning. But where all the general statutes of a state, or all on a particular subject, are revised and consolidated, there is a strong presumption that the same construction which the statutes received, or, if their interpretation had been called for, would certainly have received, before revision and consolidation, should be applied to the enactment in its revision and consolidated form, although the language may have been changed. Of course, if it is clear from the words, that a change in substance was intended, the statute must be enforced in accordance with its changed form."

"The commissioners appointed under the act of 1875 were required to revise and consolidate the statutes of a general nature and make report to the general assembly. They determined that the best way to perform that duty was to arrange all the general laws under the proper heads, and report the same to the general assembly in the form of a bill. Their power to change was very limited. It was confined to 'making alterations to reconcile contradictions, supply omissions, and amend imperfections in the original acts, so as to reduce the general statutes into as concise and comprehensive form as is consistent with the clear expression of the will of the general assembly.' "

And now the court say:

"Their power to change did not extend to matters of substance, like the right to a homestead. The commissioners were vested with no legislative power. They could recommend, and that was all; and the bill which they prepared obtained its vitality solely from its adoption by the general assembly. Changes were undoubtedly made in the bill by the general assembly, but they were not numerous. That the rule which I have stated as applicable to revisions should be applied to the Revised Statutes can admit of no doubt; and, applying the rule, it is clear a· widow is entitled to a homestead, although she may not be so fortunate as to live with, or even have, "an unmarried daughter or unmarried minor son."

Now coming back to this act of 1850, it seems to us that the original section was left out really as a matter of surplussage. It merely made the general statement that a head of a family should have a homestead. By section 2 of this act it was provided that any debtor might make a demand for a homestead, "and if such debtor *have a family*, and if the lands or tenements about to be levied on, or any part or parcel thereof, shall be the homestead thereof," the officer shall cause the homestead to be set off. That is to say that section of itself gave power to the sheriff, without any previous provision of the statute, to award or set off to the head of a family a homestead. And the matter remains, in our judgment in this shape. That in the revision and consolidation of the statutes, the revisers, and the legislature who adopted that provision, supposed that section 2 of the act of April 9, 1869, gave to the head of a family all the rights that could be given to him by the original section 1; and we therefore hold that the construction of that section of the statute should be—that the head of a family shall have a homestead allowed to him. Under section 5440 and in the original section 4 of the act of 1850, are simply designated certain classes that might come in under the definition of "head of a family," but do not

7 Dec. 25.

exclude any others. Others may be included under the term "head of a family." The result is that we must look to section 5438 to see first who is entitled to have a homestead exemption, and to section 5440 to see who is entitled to have an allowance in lieu of a homestead.

It is claimed here that in the term "head of a family" the word "family" means husband, wife and children. We are not disposed to take that view of it. We think that is too narrow and limited a construction to be placed upon the statute. We think that where a man is living with his minor children, or a woman is living with her minor children in the homestead, that she should be entitled to a homestead, or that he should be entitled to a homestead, the same as if husband and wife were living together and occupying the homestead. In various decisions in this state it has been held that a liberal construction should be given to this act for the benefit of the families of the debtors.

This matter is one of some perplexity and we have endeavored to give it very careful attention and have spent much time in reading different statutes which seem to bear upon it and have endeavored to arrive at a conclusion which shall carry out the spirit of the statutes and which shall be just to all who may claim their provisions. As I have said, there is a very large class of cases in the state of Ohio, which must be constantly arising, where the husband obtains a divorce from his wife and remains in the house with his family of minor children. Cases may arise where the wife obtains a divorce from her husband and remains in the homestead with a family of children; which homestead may have been awarded to her in the way of alimony, and we see no reason why those persons should not have the benefit of a statute of this kind. And so cases may arise. like the present one, where the husband is left with the minor children and his wife may have left him—perhaps through his own fault—but still we do not think that affects the question of his right to have a homestead. We are of opinion, therefore, in the present case, that the $500 demanded by Beier should be allowed him, or so much of it as shall remain in the hands of the court after paying the costs herein to the extent of $500.

*J. P. Delphy*, Attorney for Plaintiff.

*J. M. Ritchie*, Attorney for Defendant.